**FEDERAL TRADE COMMISSION,**
Petitioner-Appellee,

v.

**JIM WALTER CORPORATION,**
Respondent-Appellant.

No. 80–1597.

United States Court of Appeals,
Fifth Circuit.

Unit A

July 6, 1981.

Vinson & Elkins, John D. Taurman, Washington, D.C., Thompson & Knight, Eugene W. Brees, II, Dallas, Tex., for respondent-appellant.

Charles David Nelson, Federal Trade Comm., Washington, D.C., for petitioner-appellee.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

The Federal Trade Commission brought this action in the Northern District of Texas to enforce a subpoena *duces tecum* issued to Jim Walter Corporation. The district court modified the subpoena and ordered enforcement. Jim Walter argues that, because it transacts no business in the Northern District of Texas, the district court lacked statutory jurisdiction, authority for service of process and a constitutional basis for exercising jurisdiction consistent with the Due Process Clause. We find each of these arguments fundamentally flawed and hold that the district court properly exercised jurisdiction over Jim Walter. Reviewing the scope of the FTC subpoena, we conclude that, as modified by the district court, it is not unreasonably burdensome. Accordingly, we affirm the decision of the district court ordering enforcement.

### I.

Jim Walter Corporation (JWC) is a holding company providing "corporate services" for several wholly-owned subsidiaries engaged in the construction and marketing of new homes. The corporation's headquarters is located in Tampa, Florida, and all of its employees are based in the state of Florida. Jim Walter Homes, Inc., a subsidiary that builds and sells homes, does business throughout the South and Southwest and has 20 offices in Texas, including an office in Dallas.

The FTC had received complaints about "Jim Walter homes" from consumers in Texas and adjacent states. It was already engaged in investigating the housing industry, and it assigned the duty of inquiry into these complaints to its Dallas Regional Office.[1] As part of its investigation, the Dallas office issued a subpoena *duces tecum* requiring the production of documents by JWC. The subpoena contained twenty-eight specifications requiring production of nearly every document concerning the operations of JWC and its subsidiaries in addition to documents detailing JWC's relationship with its subsidiaries' customers (e. g., records of customer complaints and the like).

JWC filed a motion to quash or limit the subpoena, arguing that it was unduly burdensome. The FTC responded by modifying the subpoena, deleting one specification and, in eleven others, requiring only samples, rather than complete files. Because JWC refused to comply with the modified subpoena, the FTC sought enforcement in the District Court for the Northern District of Texas. The district court further modified the subpoena and granted enforcement.

### II.

#### A.

■ JWC's first contention is that Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, did not empower the FTC to bring this action in the Northern District of Texas. That section permits the FTC to bring an enforcement action in any district court "within the jurisdiction of which such inquiry is carried on."[2] JWC argues that, because JWC, distinguished from its subsidiaries, has neither employees nor offices in the Northern District of Texas nor does any business in the Dallas-Fort Worth area, the inquiry is not being "carried on" in the Northern District of Texas. This argument rests on a premise

* District Judge of the Western District of Texas, sitting by designation.

1. The Dallas Regional Office has responsibility for Arkansas, Louisiana, New Mexico, Oklahoma and Texas.

2. Section 9 provides, in relevant part:

Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of ... refusal to obey a subpoena ..., issue an order requiring such corporation or other person to ... produce documentary evidence.
15 U.S.C. § 49.

without any support in the language of the statute. JWC assumes that an "inquiry" may be "carried on" only where the party to whom the subpoena was issued is doing business. When an investigation involves only one company, the inquiry may be thus circumscribed. In this instance, as will frequently be the case, the FTC is investigating a number of companies, including JWC and all of its subsidiaries. Because the inquiry concerns a common set of practices, it encompasses investigation of any particular company that may be involved. To construe "inquiry" in the manner suggested by JWC would require the FTC, when conducting a nationwide inquiry, to enter a multitude of forums to enforce its subpoena. Such a requirement would frustrate the congressional purpose of facilitating nationwide inquiries. *See F.T.C. v. Browning*, 435 F.2d 96 (D.C.Cir.1970). Obversely, it would permit the FTC to institute a host of separate and potentially harassing subpoenas. Having been presented neither statutory language nor legislative history suggesting that JWC's interpretation is correct, we hold that the statutory term "inquiry" refers to the entire investigation not just that portion of it involving the party subpoenaed. *See id.; F.T.C. v. Cockrell*, 431 F.Supp. 558, 559 (D.C.D.C.1977); *F.T.C. v. Green*, 252 F.Supp. 153, 155 (S.D.N.Y.1966) (alternative holding).

■ Once "inquiry" is properly understood as referring to the entire investigation, it is clear that the inquiry is "carried on" in the Northern District of Texas. Many of the building and marketing practices under investigation have occurred in the Northern District of Texas. The inquiry is necessarily carried on wherever suspect practices are investigated to any substantial degree. *See F.T.C. v. Western General Dairies, Inc.*, 432 F.Supp. 31, 33 (N.D.Cal.1977). Moreover, we may take into account the fact that the FTC has managed this investigation from its Dallas office, although this factor is not necessarily dispositive if the choice of forum is otherwise unreasonable.[3] *F.T.C. v. MacArthur*, 532 F.2d 1135 (7th Cir. 1976).

■ That JWC's corporate headquarters and the required documents are located in Florida, relevant factors mentioned in *MacArthur*, suggests that the Middle District of Florida would also be an appropriate forum under the statute, but does not eliminate the Northern District of Texas. Enforcement may be sought in *any* district where the inquiry is carried on, not only in the district having the most substantial contact with the inquiry. *MacArthur, supra*, 532 F.2d at 1140. We hold that the district court properly exercised jurisdiction under Section 9.

### B.

■ JWC contends that, even if the Northern District of Texas is a permissible forum, the district court did not obtain personal jurisdiction over JWC because service of process in Florida was not authorized by Rule 4(e) of the Federal Rules of Civil Procedure and Section 9 of the Act. Rule 4(e) provides for extraterritorial service of process "[w]henever a statute of the United States or an order of court thereunder provides." In *FTC v. Browning, supra*, the D.C. Circuit held that Section 9 implicitly authorizes nationwide service of process. Though striving mightily, JWC has failed to show any weakness in the *Browning* court's reasoning.

As the opinion in *Browning* demonstrates, Congress would not have limited the permissible venues for FTC enforcement actions unless it contemplated extraterritorial service of process. Otherwise, the FTC could enforce its subpoenas only against those persons located within states in which the inquiry is "carried on" or subject to those states' long-arm statutes. *See* Rule 4(e). It is not likely that Congress

---

3. The choice might be unreasonable if the forum has no other connection with the inquiry and the subject matter of the investigation is centered on documents and activities in one specific locale. *See F.T.C. v. Western General Dairies, Inc., supra.* However, when a broad inquiry is pursued, the designated place of hearing or other district in which the FTC has organized the investigation may be a reasonable choice. *F.T.C. v. Browning, supra.*

intended the FTC's ability to conduct thorough investigations to be left to fortuity;

[s]uch a construction would be contrary to the congressional purpose to endow the Commission with broad powers of investigation and authority.

*Browning*, 435 F.2d at 99. Judge Wilkey also noted that FTC will frequently attempt to enforce similar or identical subpoenas directed at parties throughout the country. If extraterritorial process is not permitted under Section 9, a district court sitting in a permissible forum could not consolidate similar enforcement actions, even though consolidation is mandated both by the need for uniform application of law and the need to economize judicial resources.

JWC, alluding to its construction of "place of inquiry," argues that no gap in jurisdiction can occur because the inquiry is always "carried on" where a subpoenaed party has its headquarters. When the subpoenaed party is a target in an investigation, its home district may be a permissible forum, depending on other factors such as the location of documents and witnesses. However, subpoenas may be directed to many who are witnesses or have other relevant information and who are not themselves the subjects of investigation. The FTC may, for example, properly wish to examine the records of an independent laboratory in New York when investigating a company doing business in California. We decline to engage in the semantic exercise of calling any forum in which needed documents and witnesses are located a district in which the inquiry is "carried on."

*Robertson v. Railway Labor Board*, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119 (1925), does not support JWC's strained interpretation. In *Robertson*, the Court held that a statute authorizing enforcement actions in "any United States district court" did not implicitly authorize extraterritorial service of process. Under the Railway Board statute,

the plaintiff [was] at liberty to commence the suit in the district of which the defendant is an inhabitant, or in which he can be found.

268 U.S. at 624–25, 45 S.Ct. at 624, 69 L.Ed. at 1122. Here, the FTC may bring suit only where the inquiry is "carried on." Extraterritorial process is necessary so that enforcement will not depend on whether the party or documents sought are found within the arbitrary geographic boundaries of a state in which the inquiry is "carried on."

Perhaps aware of the weakness of its previous contentions, JWC finally resorts to sophistry on this point. It argues that, because the FTC could have filed suit in the Middle District of Florida, there was no need for the statute to provide for extraterritorial service of process. The statute adopts a rule of general application, even though a narrower rule might have sufficed. Such a rule applies to all circumstances falling within its purview, even though a particular circumstance may not pose the concern that prompted the rule's adoption. *The State Fair of Texas v. United States Consumer Product Safety Commission*, 650 F.2d 1324 (5th Cir. 1981). The use of extraterritorial service, authorized by Section 9, is not restricted to those instances in which there is no other method of reaching the subpoenaed party.

**C.**

Because JWC's statutory arguments lack merit, we reach the company's constitutional challenge to the jurisdiction of the district court. Alluding to the "minimum contacts" doctrine of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the corporation asserts that nationwide service of process under Rule 4(e) violates the fifth amendment's guarantee of due process when the entity served has no relationship with the district in which the relevant federal district court sits. This argument invites us to ignore important differences between state and federal jurisdiction and between jurisdiction and venue. We refuse to reduce these distinct concepts to a pastiche.

Recent Supreme Court decisions have clarified and expanded the reach of the *International Shoe* doctrine as applied to

state court jurisdiction,[4] but none of these have altered the constitutional rationale for the doctrine. The doctrine arises out of the limitations inherent in concepts of sovereignty. In enacting and enforcing laws, each state exercises a sovereign function. This sovereignty may be exercised only over those who reside in the state and those who undertake activities within it. By determining when "a state may make binding a judgment in personam against an individual or corporate defendant,"[5] the doctrine establishes when a defendant may be fairly thought to have submitted itself to that limited sovereignty.[6]

 Properly understood as defining the limits on the exercise of the sovereign function, the doctrine's application to federal jurisdiction is unambiguous. Subject *only* to the regulation of Congress, each federal court exercises the "judicial Power of the United States,"[7] not a judicial power constitutionally limited by the boundaries of a particular district. *See Briggs v. Goodwin*, 569 F.2d 1 (D.C.Cir.1977), *rev'd on other grounds sub nom. Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). Because the district court's jurisdiction is always potentially, and, in this case, actually co-extensive with the boundaries of the United States, due process requires only that a defendant in a federal suit have minimum contacts with the United States, "the sovereign that has created the court," *Stafford v. Briggs*, 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1, 21 (1980) (Stewart, J., dissenting).[8] JWC, as a resident United States corporation, necessarily has sufficient contacts with the United States to satisfy the requirements of due process. *See, e. g., Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir. 1979).[9]

Anticipating our analysis, JWC argues that we should not focus on the concept of "minimum contacts" *per se*, but should instead determine whether requiring JWC to

**4.** *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

**5.** *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104.

**6.** [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *International Shoe Co. v. State of Washington*, [supra].
*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1297 (1958). *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–296, 100 S.Ct. 559, 564–66, 62 L.Ed.2d 490, 497–501 (1980). Only when those contacts exist may a state, in accordance with "traditional notions of fair play and substantial justice," demand that a party defend litigation in a distant and inconvenient forum. *Id.* 444 U.S. at 554, 100 S.Ct. at 789, 63 L.Ed.2d at 21, *quoting International Shoe.*

**7.** U.S.Const. Art. III, § 2.

**8.** In *Stafford*, Justice Stewart, joined by Justice Brennan, set forth the analysis we adopt here. *Accord, Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir. 1979); *Driver v. Helms*, 577 F.2d 147 (1st Cir. 1978), *rev'd on other grounds sub nom. Colby v. Driver*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) [i. e. consolidated with *Stafford v. Briggs*]; *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir. 1974). *See Briggs v. Goodwin*, 569 F.2d 1 (D.C.Cir.1977), *rev'd on other grounds sub nom. Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). The majority opinion in *Stafford* decided appellants' venue challenge on statutory grounds and did not reach the constitutional issue.

**9.** *Lone Star Package Car Co. v. Baltimore & Ohio R.R.*, 212 F.2d 147 (5th Cir. 1954), is not to the contrary. Lone Star filed a third party complaint against the railroad, alleging liability under 49 U.S.C. § 20(11), which provides a federal remedy for damage to goods caused by common carriers. *International Shoe* was cited to determine whether the railroad had sufficient minimum contacts with the Southern District of Texas to establish the district court's jurisdiction only because nationwide service of process was not authorized by Rule 4(e). Judge Rives noted that Congress could provide for nationwide service of process without violating the Constitution. 212 F.2d at 154. *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974), the only case to adopt appellant's position, mistakenly relies on *Lone Star* and misconstrues the *International Shoe* line of cases. Significantly, no other court has followed the *Oxford* approach. For more extensive criticism of *Oxford, see Fitzsimmons v. Barton, supra*, 589 F.2d at 334.

defend in a distant forum offends "traditional notions of fair play and substantial justice." Undoubtedly, one of the "functions" of due process limitations on jurisdiction is to prevent "distant or inconvenient" litigation. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980), *citing International Shoe*. *International Shoe*, however, stands for the proposition that minimum contacts with the sovereign are the prerequisites that satisfy "traditional notions of fair play and substantial justice," as the full quotation from the opinion reveals:

> "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it *such that* the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. (Emphasis supplied).

Nothing in *International Shoe* or any later Supreme Court opinion suggests that anything more than minimum contacts is required to support jurisdiction over a nonresident defendant.

■ In effect, JWC seeks to create a novel "minimum contacts" doctrine for venue, constitutionalizing the "forum non conveniens" doctrine. JWC's confusion is multiple. "Minimum contacts," as a jurisdictional doctrine, justifies a court's exercise of the sovereign's power to "subject a defendant to judgment." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. When minimum contacts exist with the relevant sovereign, due process no longer protects a defendant from distant litigation because the location of permissible venues is a matter of sovereign prerogative. Brilmayer, *How Contacts Count: Due Proc-*

*ess Limitations on State Court Jurisdiction*, 1980 Sup.Ct.Rev., 77, 109. Article III grants Congress plenary power to organize the jurisdiction and venue of federal courts. *See Briggs v. Goodwin, supra. Cf. Ex parte McCardle*, 74 U.S. (7 Wall) 506, 19 L.Ed. 264 (1869) (Congress may eliminate the appellate jurisdiction of the Supreme Court over federal cases). Whether due process imposes any limit on congressional exercise of its regulatory power under Article III is still an open question, as the debate over the continued vitality of *McCardle* suggests. In analyzing this issue, we do not look to the "fairness" of the regulation. "Fairness" is a component of the jurisdictional test, but has no relevance to determining the constitutionality of Congressional regulation, given the magnitude of Congressional discretion in this area. The regulation must deprive the litigant of process actually due; the quality of justice must indeed be strained.

■ JWC has failed to demonstrate such deprivation. JWC is protected by the same procedural and substantive safeguards whether it defends this suit in the Northern District of Texas or the Middle District of Florida. JWC's true complaint is that it is more expensive and inconvenient to defend a suit in a distant forum, but Congress has no constitutional obligation to make litigation as inexpensive as possible. Moreover, if the ability of one litigant to impose inordinate expense on another violated due process, major segments of our system of civil litigation might be rendered unconstitutional, rather than merely distressing. While the Alaska Supreme Court has suggested that, under certain circumstances, the inordinate expense imposed by statewide service of process in suits involving small claims could effectively deny indigent defendants access to the courts,[10] there is no indication here that JWC has been denied

---

10. Resolution of this issue would require a complicated analysis bringing together the access-to-court principles of *Boddie [v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)] and the unfair creditor leverage doctrine of *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny.
*Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1355 n.13 (Alaska 1974) (other citations omitted). *See* Brilmayer, *supra*, 1980 Sup.Ct. Rev. at 109, n.149.

access to the courts by the expense of defending this suit in a distant venue.

The Northern District of Texas is a proper venue under Section 9. Nationwide service of process is authorized under Rule 4(e) and does not violate due process. We hold that the district court properly exercised jurisdiction over JWC.

## III.

■ JWC claims that the subpoena was impermissibly burdensome, asking for too much from too long a period about too many customers. We review only to determine whether the district judge abused his discretion, *EEOC v. Packard Electric Division*, 569 F.2d 315 (5th Cir. 1978), and conclude that the district judge, who conscientiously reviewed and modified the subpoena's requirements, acted well within that bound.[11]

## A. TOO MUCH

■ We may deny enforcement of the subpoena only if JWC can show that compliance would impose an "unreasonable" burden. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (FTC order); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The subpoenaed party may not merely utter the claim; it must persuade us. *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

■ When the information sought is relevant, *FTC v. Turner*, 609 F.2d 743 (5th Cir. 1980), and not redundant with material readily obtainable by other means, *EEOC v. Packard Electric Division*, 569 F.2d 315, 318–19 (5th Cir. 1978), a subpoena is not unreasonably burdensome unless "compliance threatens to unduly disrupt or seriously hinder normal operations of a business."

*FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir. 1979), *quoting FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C.Cir.1977) (*en banc*), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977). *See FTC v. Shaffner*, 626 F.2d 32 (7th Cir. 1980). When a subpoena threatens to be unreasonable, we must then balance the "hardships and benefits." *See Packard Electric Division*, 569 F.2d at 318.

JWC has not shown that compliance threatens to disrupt the activities of JWC and its subsidiaries. As the FTC notes, the courts have ordered compliance with subpoenas imposing even greater costs. *See e. g., California Bankers Association v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) ($392,000); *FTC v. Texaco, supra* ($4,000,000). The district judge had a far better opportunity to determine the burden imposed on JWC. He obviously thought that the subpoena, as he had modified it, did not impose an unreasonable burden. Absent a showing of disruption, the sheer number of documents sought does not demonstrate that the district judge abused his discretion.

## B. TOO LONG

JWC also attacks the provision of the subpoena requiring the corporation to update the required materials "until thirty days prior to ... complete return of the specification." JWC informs us that this provision is "beyond the FTC's authority and contrary to law" without citing the authority ignored or the law violated. Requiring a party to supplement responses in order to make them current is an approved feature of our civil procedure. *See* Fed.R. Civ.P. Rule 26(e). Unless the agency has no real need for current materials, it is allowed to require that the material furnished it be up-to-date.

11. In modifying the subpoena, the district court omitted one irrelevant specification, allowed Jim Walter to exclude irrelevant portions of relevant materials, and required that the 15% customer samples be "representative;" because

"a sample to be selected at the whim of the FTC staff could easily become unduly burdensome and cause significant disruption to the business of some of JW's subsidiaries and branch offices."

In all other respects, the subpoena was found not to be unreasonably burdensome.

JWC argues that the FTC is attempting to coerce the corporation into foregoing any administrative or judicial challenge. No evidence is adduced showing that this was the FTC's intention. By the same token, the FTC could argue that JWC sought to prevent the FTC from keeping abreast of JWC's activities. If the provision is truly so burdensome as to affect the subpoenaed party's zeal, the agency or reviewing court should modify the provision accordingly. We cannot say that the district court abused its discretion by failing to do so.

### C. TOO MANY

As a last resort, JWC argues that the FTC could not now require a 15% sample because, in an earlier investigation involving a different company, the FTC had only required a 5% sample. This is surpassing speciousness. Previous subpoenas are not administrative rules governing future subpoenas and do not limit the agency's discretion to seek a greater number of documents in subsequent investigations.

AFFIRMED.