**William B. SMITH, M.D., et al, Plaintiffs,**

v.

**PITTSBURG NATIONAL BANK, et al, Defendants.**

Civ. A. Nos. 86–0162–B, 86–0176–B, 86–0177B.

United States District Court, W.D. Virginia, Big Stone Gap Division.

Dec. 4, 1987.

James W. Elliott, Jr., Abingdon, Va., for plaintiffs.

Jeffrey J. Leech, Pittsburgh, Pa., for Pittsburg Nat. Bank.

Thomas F. Anderson, Roanoke, Va., for Energy Dev. Corp.

Phillip C. Stone, Harrisonburg, Va., for Rocovich.

Jennings T. Bird, Roanoke, Va., for Robert D. Taylor.

## OPINION

GLEN M. WILLIAMS, District Judge.

This dispute involves alleged violations of the securities laws stemming from an oil and gas partnership which apparently did not return the profits the investors expected. Two parties to the transaction, the financing bank and the officers and directors of the corporation which operated the wells, have moved to dismiss for lack of personal jurisdiction. The issue is the "minimum contacts" which the Fifth Amendment requires in order for a district court to exercise federal question jurisdiction over an out-of-state party. In view of a recent Supreme Court decision, this court rules that the Fifth Amendment requires something more than minimum contacts with the United States, the older view, but something less than minimum contacts with the forum state, the diversity jurisdiction approach. Consequently, the court denies the bank's motion to dismiss but directs the parties to engage in further discovery before ruling on the officers and directors' motion.

### I

■ The plaintiffs in this action are owners of shares of a limited partnership called The Energy Development Corporation 1983–B Private Drilling Program. The purpose of the partnership is to acquire, drill and profitably operate oil and gas wells in Tennessee and West Virginia. Alamco, Inc. drilled, equipped, and operated the wells for a fee. Pittsburg National Bank (PNB) provided most of the financing for the investment. The plaintiffs' bring this suit against Alamco, its officers and directors, Pittsburg National Bank, and its law firm alleging violations of federal and state securities laws, the Racketeer Influenced Corrupt Organizations Act (RICO) and common law fraud and deceit. The bank and directors and officers of Alamco, have filed motions to dismiss for lack of personal jurisdiction.

In order for this court to obtain personal jurisdiction over the defendants, two requirements must be met. First, there must be an applicable rule or statute which potentially confers jurisdiction over the defendants. *Securities Investor Protection Corporation v. Vigman,* 764 F.2d 1309, 1313–14 (9th Cir.1985). Second, the court's assertion of jurisdiction must accord with the Constitution. *Id.* The parties agree that 15 U.S.C.A. § 78aa (1981) potentially confers jurisdiction over the defendants for securities laws violations because of the nation-wide service of process provisions. They disagree, however, on the Constitution's due process requirements.

There is no doubt that a district court's exercise of jurisdiction must abide by the Constitution. As *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny has taught, a state court, or a federal court exercising diversity jurisdiction, must determine whether a defendant has minimum contacts with the forum state before the court can exercise jurisdiction. *Worldwide Volkswagon Corp. v. Woodson,* 444 U.S.

286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). This requirement stems from the Due Process clause of the Fourteenth Amendment. *Id.* However, when a District Court exercises Federal Question Jurisdiction, the Due Process Clause of the Fifth Amendment applies. *Mariash v. Morrill,* 496 F.2d 1138, 1143 (2nd Cir.1974). The question then becomes whether the Fifth Amendment restricts a federal court's jurisdiction in the same manner as the Fourteenth Amendment restricts a state court's jurisdiction.

The decisions of the courts which have considered limitations on federal question jurisdiction fall in three categories. First, the majority view is that a defendant need only have minimum contacts with the nation and not with the forum state or district in order to exercise jurisdiction. *Mariash* 496 F.2d 1143; *FTC v. Jim Walter Corp.,* 651 F.2d 251 (5th Cir.1981); *Haile v. Henderson National Bank,* 657 F.2d 816 (6th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982); *Fitzsimmons v. Barton,* 589 F.2d 330 (7th Cir. 1979). Judge Dalton of this district also followed this approach in *Sohns v. Dahl,* 392 F.Supp. 1208 (W.D.Va.1975). Courts adopted this view because the Supreme Court equated jurisdiction with a sovereign's exercise of power. *See, e.g., Fitzsimmons,* 589 F.2d at 334. The reasoning is that as long as an individual is within a sovereign's territory, the sovereign's court can exercise jurisdiction. *Id.*

The other types of cases take a more restrictive view. In the second category, courts apply the Fourteenth Amendment minimum contacts criteria in the Fifth Amendment context. *See Bamford v. Hobbs,* 569 F.Supp. 160 (S.D.Tex.1983) (Clayton Act Jurisdiction); *GRM v. Equine Inv. and Man. Group,* 596 F.Supp. 307 (S.D.Tex.1984); *Wichita Federal Savings and Loan Assoc. v. Landmark Group,* 657 F.Supp. 1182, 1194–95 (D.Kan.1987). With this approach, the result is that there is no distinction between a district court's diversity and federal question jurisdiction. Some court have criticized this approach because the *International Shoe* cases concern a state court's exercise of jurisdiction

outside of its own territory. *E.g., Haile,* 657 F.2d at 825.

In the final approach, one court has developed an intermediate view. *Oxford First Corp. v. PNC Liquidating Corporation,* 372 F.Supp. 191 (E.D.Penn.1974); *accord Gilbert v. Bagley,* 492 F.Supp. 714 (M.D.N.C.1980); *Fulk v. Bagley,* 88 F.R.D. 153, 167 (M.D.N.C.1980) (apparently related cases). The *Oxford First* court developed several factors to be considered: the extent of the defendant's contacts with the place where the action was brought; the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business; judicial economy; the situs of discovery proceedings; and the nature of the regulated activity and the extent of impact. *Id.* at 203. The court believed the Fifth Amendment required something more than the minimum-contacts-with-the-nation approach but something less than the *International Shoe* limitations on a state court's jurisdiction. *Id.*

The minimum-contacts-with-the-nation approach, the first of the three categories, has recently been placed in doubt as a result of the Supreme Court's decision in *Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). That case involved a district court that assumed jurisdiction pursuant to Fed.R. Civ.Pro. 37(b)(2)(A) over a party as a sanction for failing to comply with a discovery order. In affirming the sanction, the Supreme Court ruled that the personal jurisdiction requirement of a court's exercise of power protects a waiveable individual right, rejecting the view that the restriction on judicial power was a matter of sovereignity. *Id.* at 702, 102 S.Ct. at 2104. This rejection of the sovereignity theory is significant because it formed the basis for the minimum-contacts-with-the-nation test. *E.g., Fitzsimmons,* 589 F.2d at 333.

This court believes the *Oxford First* approach is the best of the three views because it recognizes the underlying rationale of fundamental fairness to restrictions on jurisdiction. 372 F.Supp. at 203. The *Ox-*

*ford First* approach makes sense considering that Congress could have drawn the boundaries of the District Court's jurisdiction along those of the United States. 28 Fed.Proc.L.Ed. § 65:2 (1984). This court rejects the minimum-contacts-with-the-state approach because it is a state-centered analysis. For example, in this securities case, the interest of Virginia is irrelevant in having a federal court adjudicate a federal securities law dispute; this is one of the factors to consider in the Fourteenth Amendment approach. This approach also ignores the fact that the Securities Laws, 15 U.S.C.A. § 77aa, and the Antitrust laws, 15 U.S.C. § 5, provide for nation-wide service of process. *Wichita*, 657 F.Supp. at 1194. The court rejects the minimum contacts-with-the-nation approach because it does not adequately protect the interests of the individual. Only a foreign corporation who had no contact with the United States would be protected under such a test. Furthermore, with the Supreme Court's rejection of the sovereignity theory of jurisdiction in *Insurance Corp. of Ireland,* this approach is of doubtful viability.

## II

■ Applying the *Oxford First* test, the court concludes that it can constitutionally exercise jurisdiction over PNB. One factor requires the court to examine the evidence concerning PNB's contacts with Virginia, which consists of two affidavits. The first affidavit contains a bare conclusion that PNB had no contact, even through agents, with Virginia; the other states that the Bank employed attorneys to solicit the investors' signatures for the assumption agreements required by the bank before it would provide financing. The court concludes that the attorneys were the agents of the bank for the transaction. The plaintiff notes that, in the Fourteenth Amendment context, this agency would have been sufficient to justify jurisdiction. *John C. Kolbe, Inc. v. Chromodern Chair Company,* 211 Va. 736, 180 S.E.2d 664 (1971) (Jurisdiction over a non-resident defendant was upheld when an agent for the defendant approached the plaintiff in Virginia and

requested a purchase order to be mailed to the defendant's out of state offices).

The remaining factors also weigh in favor of jurisdiction. The court notes it is inconvenient for any state-based concern to litigate in an out-of-state forum. However, if financing an out-of-state transaction with out-of-state residents is not too inconvenient for business purposes, going out of state to defend a related suit should not be too inconvenient either. Similarly, this case involves multi-state residents and oil and gas wells. Discovery will most likely take place in a number of areas, none of which would be any more convenient for the bank. *See Gilbert,* 492 F.Supp. at 747–48. It would also be unfair to judicial resources to require a portion of this case to proceed in another district.

The last factor concerns the impact of the regulated activity outside of the state. There is no doubt that securities investing affects the nation, if not the world. One need only look to the latest market panic to see the effect. The court realizes this transaction was consumated pursuant to Regulation A. However, considering the large sum involved, and the number of multi-state investors, this transaction was not one confined to a locality. *Oxford First,* 372 F.Supp. at 205.

The court does not apply the *Oxford First* analysis to the officers and directors because of the lack of evidence to complete the first prong of the test. Therefore, the court orders the parties to engage in further discovery to develop a more complete record.

### CONCLUSION

The court denies the Bank's motion to dismiss but refrains from ruling on the officers' and directors' motion until a better record is developed.

The court directs the clerk to send certified copies of this Opinion to counsel of record.