John P. DUCKWORTH, Plaintiff,

v.

**MEDICAL ELECTRO–THERAPEUTICS, INC., Charles E. Duckworth, and Lisa Cranford, a/k/a Lisa Duckworth, Defendants.**

No. CV 190–293.

United States District Court,
S.D. Georgia,
Augusta Division.

May 28, 1991.

Neal W. Dickert, Wm. W. Horlock, Jr., Augusta, Ga., for plaintiff.

Charles C. Stebbins, III, Augusta, Ga., Tucker H. Byrd, Orlando, Fla., for Medical Electro–Therapeutics, Inc.

James W. Purcell, Fulcher, Hagler, Reed, Obenshain, Hanks & Harper, Augusta, Ga., for Charles E. Duckworth and Lisa Cranford.

## ORDER

EDENFIELD, Chief Judge.

This order concerns personal jurisdiction and venue. The individual defendants in this case, Charles and Lisa Duckworth, argue that this Court does not have personal jurisdiction over them, and they ask the Court to dismiss the complaint. The Court DENIES this motion. In the alternative, the defendants argue that it would be more convenient to litigate this matter in Nashville, Tennessee, and so they seek transfer of this case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Middle District of Tennessee, Nashville Division. The Court DENIES this motion as well.

## BACKGROUND

■ For the purpose of these motions, the Court has construed the facts in favor of the plaintiff for the following reasons. Because this Court has chosen not to conduct a discretionary evidentiary hearing on the defendants' motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing a prima facie case of personal jurisdiction over the moving defendants. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988); *De-Long Equip. Co. v. Washington Mills Abrasive, Co.,* 840 F.2d 843, 845 (11th Cir. 1988). If the plaintiff presents enough evidence to withstand a motion for directed verdict, then he has made out the prima facie case. *Madara,* 916 F.2d at 1514. The Court must accept as true all of the facts alleged in the complaint to the extent that the defendant offers no evidence to the contrary. *E.g., Madara,* 916 F.2d at 1514; *Cable/Home Communication Corp. v. Network Prod., Inc.,* 902 F.2d 829, 855 (11th Cir.1990). Where, however, the defendant offers evidence to contest the plaintiff's assertion, the Court must construe all reasonable inferences in favor of the plaintiff. *E.g., Madara,* 916 F.2d at 1514; *Cable/Home Communication,* 902 F.2d at 855.

This case springs from a family business dispute. During the Christmas holidays in 1987, the plaintiff, John P. Duckworth, and the individual defendants, Charles Duckworth and Lisa Cranford, met at a relative's home in Ocilla, Georgia, and discussed starting a business together. The plaintiff returned to his home in Waycross, Georgia, where he received a number of telephone calls from the defendants over the next few months about opening the business in Nashville, Tennessee, the defendants' place of residence. Further discussions took place on April 2, 1988, at a family gathering in Thomasville, Georgia.

In March 1988, the plaintiff and the individual defendants incorporated the company in Nashville, Tennessee, and called it Medical Electro–Therapeutics, Inc. The plaintiff was elected as a director and Secretary–Treasurer at the initial organization meeting. He also received 200 shares of stock, representing 20% ownership. On April 18, 1988, the plaintiff moved to Nashville to work full time for the new corporation. He served as director and officer of the company, and he was integrally involved in the day-to-day operation of the corporation, overseeing all office personnel and management of all accounting procedures, banking transactions, marketing and sales.

After the plaintiff moved to Nashville, he met several times with the defendants at family gatherings in Georgia. In August 1988, they met at a family reunion in Perry, Georgia, and discussed aspects of the business. During the Thanksgiving weekend of 1988, the plaintiff met the defendants at his sister's home in Ocilla, Georgia. While there, the three discussed business. On May 25, 1989, the Duckworths' father, Charles E. Duckworth, Sr., died in Tifton, Georgia. He left an estate of real property in Georgia to his children, including Charles and John Duckworth.

On June 30, 1989 the plaintiff moved from Nashville, Tennessee, to Augusta, Georgia, to pursue other professional opportunities. Until March 29, 1990, the plaintiff continued in his capacity as director and Secretary–Treasurer of the corporation, and he continued to hold a 20% interest in the company.

On March 1, 1990, Charles Duckworth and Lisa Cranford telephoned the plaintiff in Augusta, Georgia, and indicated that they were interested in repurchasing the plaintiff's shares in the corporation. In March 1990, Charles Duckworth made numerous telephone calls to Augusta to negotiate the purchase. Lisa Cranford was in the room and contributed to the conversations through Charles Duckworth. On March 9, 1990, Charles Duckworth sent the plaintiff an offer to purchase his shares by Federal Express to Augusta. On March

29, 1990, the parties entered into an agreement, as reflected in a promissory note with that same date. Pursuant to this agreement, Charles Duckworth and Medical Electro–Therapeutics, Inc. were to pay John Duckworth $25,000, in fifty monthly installments of $500 each. In exchange, the plaintiff agreed to transfer his 200 shares and to relinquish his office and directorship in the company. Some initial payments were made in March and April of 1990.

On April 1, 1990, the defendants Charles and Lisa Duckworth, as President and Vice–President of Medical Electro–Therapeutics, Inc., sold substantially all of the assets of the corporation to Southeastern Health and Medications, Inc. ("Southeastern"), a subsidiary of Rotech Medical Corporation, for $500,000 in cash and 65,180 shares of restrictive common stock in Rotech Medical Corporation.

On June 15, 1990, the plaintiff received a check for $23,000.00, the balance of the promissory note. Enclosed with the check was a full release and settlement agreement for the plaintiff to sign. He never signed them, and he never cashed the check.

The plaintiff contends that while the individual defendants were negotiating to repurchase the plaintiff's shares, they were also negotiating to sell substantially all of the company's assets to Southeastern. The plaintiff claims that the defendants never told him about the ongoing negotiations with Southeastern. These actions and omissions, the plaintiff contends, violate Section 10B of the Securities and Exchange Act of 1934. On December 14, 1990, the plaintiff sued the defendants pursuant to this statute in the United States District Court for the Southern District of Georgia, Augusta Division. The plaintiff also alleges fraud, breach of fiduciary duty, and Georgia securities violations.

The individual defendants were personally served with process pursuant to Fed. R.Civ.P. 4. They have answered the complaint and filed a motion to dismiss for lack of personal jurisdiction. In the alternative, they seek a transfer, pursuant to 28 U.S.C.

§ 1404(a), to District Court in Nashville, Tennessee.

## ANALYSIS

### I. *Personal Jurisdiction*

■ To determine questions of personal jurisdiction, courts generally should first determine whether a defendant can properly be served with process under the applicable statute, and then inquire if that service comports with constitutional principles of due process. *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991) (diversity case); *Go–Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th Cir.1989) (federal question case). The defendants in this action were served with process in Nashville, Tennessee, under 15 U.S.C. § 78aa, which provides for nationwide service of process for civil actions to enforce the Securities and Exchange Act of 1934. 15 U.S.C. § 78aa (1988). Thus, the heart of the personal jurisdiction question in this case is whether this service violates the defendants' due process rights.

■ In diversity cases, a court has the constitutional power to exercise personal jurisdiction over a defendant if "the defendant purposefully established 'minimum contacts' in the forum 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Complete Concepts, Ltd. v. General Handbag Corp.*, 880 F.2d 382, 388 (11th Cir.1989) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In general, the minimum contacts prong of this test requires that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159-60. If a defendant has established minimum contacts with the forum state, then courts may exercise personal jurisdiction unless the defendant "present[s] a compelling case that ... some other considerations would render jurisdiction unreasonable" and would offend traditional notions of fair play and substantial

justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). In appropriate cases, courts may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477, 105 S.Ct. at 2184 (citation and internal quotations omitted).

The application of these principles to diversity cases is clear. This case, however, is not a diversity case. It is less clear what the constitutional requirements are for personal jurisdiction in a federal question case with nationwide service of process.

### A. *Jim Walter* and Sovereignty

For federal question cases with nationwide service of process, the former Fifth Circuit, in *Federal Trade Commission v. Jim Walter Corporation*, 651 F.2d 251 (5th Cir. Unit A 1981), applied a variation of the minimum contacts test, the national contacts test. Under the national contacts test, the defendant must have minimum contacts with the United States. According to the former Fifth Circuit, the variation reflects the fact that the federal rather than a state sovereign exercises its power in a federal question case.

> The [minimum contacts] doctrine arises out of the limitations inherent in concepts of sovereignty. In enacting and enforcing laws, each state exercises a sovereign function. The sovereignty may be exercised only over those who reside in the state and those who undertake activities within it.... [T]he doctrine establishes when a defendant may fairly be thought to have submitted itself to that limited sovereignty.

*Jim Walter*, 651 F.2d at 256 (citations and footnotes omitted). In other words, a court has sovereign power only over those defendants who have "minimum contacts" with the relevant sovereign. With that explanation in mind, the former Fifth Circuit easily

decided that a defendant in a federal question case must have minimum contacts with the sovereign United States, but not the particular state in which the federal court happened to sit. The court explained:

> Subject *only* to the regulation of Congress, each federal court exercises the "judicial Power of the United States," not a judicial power constitutionally limited by the boundaries of a particular district. Because the district court's jurisdiction is always potentially, and, in this case, actually co-extensive with the boundaries of the United States, due process requires only that a defendant in a federal suit have minimum contacts with the United States, "the sovereign that has created the court."

*Id.*

The defendant in *Jim Walter* argued that requiring him to defend a federal suit in a distant forum offends "traditional notions of fair play and substantial justice." *Id.* at 256–57 (quoting *International Shoe*). Accordingly, he contended that the minimum contacts with the nation test did not protect his due process rights. The court emphatically rejected this argument because it believed that the minimum contacts test appropriately limited the sovereign's exercise of power. If the sovereign did not overstep its bounds, the defendant could not complain of unfairness or injustice. The court stated: "*International Shoe* ... stands for the proposition that minimum contacts with the sovereign are the prerequisites that satisfy 'traditional notions of fair play and substantial justice.'" *Id.* at 257. *But see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'").

The Supreme Court, too, used to relate the personal jurisdiction requirement, at least in state court actions or actions in diversity, to notions of sovereignty. The Court acknowledged: "It is true that we have stated that the requirement of personal jurisdiction, as applied to state courts, reflects an element of federalism and the character of state sovereignty vis-à-vis other States." *Insurance Corp. of Ireland, Ltd. v. Campagnie des Bauxites*, 456 U.S. 694, 702–03 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982). For example, the Supreme Court once explained that this state sovereignty element is embodied in the concept of minimum contacts:

> [A] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts the defendant and the forum State. ɪne concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts. do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system.

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (citation omitted).

### B. Doubts About the Sovereignty Rationale

In *Insurance Corporation of Ireland,* however, the Supreme Court rejected sovereignty as a distinct rationale for personal jurisdiction. Instead, the Court noted that the personal jurisdiction requirement arises from the Due Process Clause rather than Article III, and explained that the requirement represents "a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ireland,* 456 U.S. at 702–03, 102 S.Ct. at 2104. Despite this change in focus, the Court did not overrule *World–Wide Volkswagen* insofar as that case recognized a separate sovereignty function of the minimum contacts test. Instead, the Court explained:

> The restriction on state sovereign power described in *World–Wide Volkswagen Corp.,* however, must be seen as ultimately a function of the individual liber-

ty interest preserved by the Due Process Clause. That Clause is the only source of the personal jurisdiction requirement and the Clause itself makes no mention of federalism concerns.

*Ireland,* 456 U.S. at 703 n. 10, 102 S.Ct. at 2104 n. 10.

This change in focus has cast doubt on the continuing viability of the national contacts test. The Supreme Court explicitly has declined to decide whether national contacts are adequate for the exercise of personal jurisdiction in federal cases. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 102 n. 5, 108 S.Ct. 404, 408 n. 5, 98 L.Ed.2d 415 (1987); *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113 n., 107 S.Ct. 1026, 1033 n., 94 L.Ed.2d 92 (1987) (plurality opinion). Nevertheless, *Ireland* has eliminated Jim Walter's rationale for using the national contacts test. *Jim Walter* assumed, after all, that the minimum contacts "doctrine arises out of the limitations inherent in concepts of sovereignty." *See Jim Walter,* 651 F.2d at 256. *But cf. Go–Video, Inc. v. Akai Elec. Co., Ltd.,* 885 F.2d 1406 (9th Cir.1989) (seemingly ignoring the distinction between constitutional and statutory requirements of personal jurisdiction when it stated: "national contacts analysis more often finds its basis not in an abstract theory of sovereignty, but in the concrete language of a statute under which Congress has, as it is unquestionably empowered to, authorized nationwide service of process.") With the sovereignty premise, the former Fifth Circuit naturally had concluded that the defendant needed to have minimum contacts only with the sovereign exercising the power.

C. Searching for Alternatives to the National Contacts Test

In light of *Ireland,* courts have reassessed the requirements of personal jurisdiction in federal cases with nationwide service of process. The Eleventh Circuit has not decided what approach is appropriate, although it has noted that district courts fail to agree on the issue. *In re Chase & Sanborn Corp.,* 835 F.2d 1341, 1344 n. 8 (11th Cir.1988), *rev'd on other grounds sub nom., Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Similarly, the Fifth Circuit has not created a new test, but it has suggested that *Ireland* eroded the rationale of its holding in *Jim Walter. See Burstein v. State Bar of California,* 693 F.2d 511, 515–16 (5th Cir.1982). Some district courts have continued to apply the national contacts test, often without analyzing the changes wrought by *Ireland.*[1]

Others have held that contacts with the state in which the federal court sits must be considered even in federal question cases with nationwide service of process.[2] In essence, they analyze the personal jurisdiction question in federal cases with nationwide service of process almost as they would analyze the issue in a diversity case. To decide whether minimum contacts exist, these courts consider the following factors: (1) the burden imposed on the defendant by litigating in the forum state, (2) the defendant's reasonable expectations and the foreseeability of litigation in the forum state, (3) the plaintiff's interest in convenient and effective relief, (4) the federal judicial system's interest in efficiently resolving controversies, and (5) the forum state's interest in having a court within the forum adjudicate the dispute. *Cannon,* 699 F.Supp. at 268; *Wichita,* 657 F.Supp.

---

1. *See Crawford v. Glenns, Inc.,* 637 F.Supp. 107, 109–110 (N.D.Miss.1986) (*"Insurance Corp. of Ireland* did not eliminate the relevance or significance of sovereignty as it relates to the doctrine of personal jurisdiction"); *Prospect Hill Resources, Inc. v. Chenoweth,* 69 B.R. 79 (N.D.Ga. 1986); *Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667, 679–80 (N.D.Ga.1983) (does not cite *Ireland*); *Clement v. Pehar,* 575 F.Supp. 436, 438–39 (N.D.Ga.1983) (does not cite *Ireland*); *Pioneer Properties, Inc. v. Martin,* 557 F.Supp. 1354, 1358 n. 6 (D.Kan.1983); *see also Go–Video,* 885

F.2d at 1413 (continuing to use the national contacts test, but relying on a statutory basis).

2. *See Cannon v. Gardner–Martin Asphalt Corp. Ret. Trust–Profit Sharing Plan,* 699 F.Supp. 265, 267–68 (M.D.Fla.1988); *Wichita Fed. Sav. & Loan Ass'n v. Landmark Group, Inc.,* 657 F.Supp. 1182, 1194 (D.Kan.1987); *GRM v. Equine Inv. & Management Group,* 596 F.Supp. 307, 314–15 (S.D.Tex.1984); *Bamford v. Hobbs,* 569 F.Supp. 160, 166 (S.D.Tex.1983).

at 1194; *GRM,* 596 F.Supp. at 315; *Bamford,* 569 F.Supp. at 166.

These factors, borrowed from the minimum contacts test developed in diversity cases, adequately protect a defendant's individual liberty interest. Nevertheless, these cases imply that the forum state has an interest in the location of federal question litigation. The state of Georgia has no interest in having this Court adjudicate this federal securities case, yet this is one factor that the Court must consider under this modified contacts with the state forum test.[3] The defendant's expectation of litigation in the *forum state* also seems irrelevant. Fair play and substantial justice cannot turn simply upon whether a defendant must cross a state border to get to court. As more than one court has noted, a defendant from Portland, Maine must cross twelve state borders to defend a suit in Raleigh, North Carolina, yet he travels no farther than an El Paso, Texas defendant forced to litigate in Beaumont, Texas. *GRM,* 596 F.Supp. at 314; *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 201 (E.D.Pa.1974) (Becker, J.).

In *Oxford First,* the court developed a novel personal jurisdiction standard, intermediate to the national contacts test and the minimum contacts with the state test, to be used in federal cases with nationwide service of process. *See Oxford First,* 372 F.Supp. at 201. The *Oxford First* standard requires the Court to consider the following factors: (1) the extent of the defendant's contacts with the place where the action was brought, (2) the inconvenience to the defendant of having to defend in a place other than his residence or place of business, (3) judicial economy, (4) probable situs of discovery proceedings, and (5) the nature of the regulated activity in question (here, the exchange of securities) and the extent of impact of that activity. *Id.* at 203–204; *Smith v. Pittsburg Nat'l Bank,* 674 F.Supp. 542, 544 (W.D.Va.1987). Because the former Fifth Circuit believed that

personal jurisdiction requirements reflected underlying notions of sovereignty, it rejected the *Oxford First* standard. *Jim Walter,* 651 F.2d at 256 n. 9. The *Oxford First* standard is consistent, however, with *Ireland's* recognition that the underlying rationale of restrictions on jurisdiction is fundamental fairness. *Smith,* 674 F.Supp. at 544; *Oxford First,* 372 F.Supp. at 203.

### D. Revitalizing the National Contacts Test

To comport with recent Supreme Court cases, however, this Court need not choose between these alternatives to the national contacts test. Although *Jim Walter's* rationale for the national contacts test is no longer valid, the test itself, or a variation of it, continues to guarantee that the exercise of personal jurisdiction in a federal case comports with "traditional notions of fair play and substantial justice."

The national contacts test survives because it requires a determination that the defendant has "purposefully availed" itself of the protection of the federal law. Courts exercise personal jurisdiction in state actions if the defendant has "purposefully directed" its activities toward residents of the state because the defendant's actions give it fair warning that he may be haled into court there. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). By deliberately engaging in significant activities within a state, a defendant avails itself of the privilege of conducting business there, and "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184.

Using analogous reasoning, because all United States citizens and corporations doing business in the United States have "purposefully availed" themselves of the

---

**3.** The plaintiff also alleges that the defendants violated Georgia securities laws, and the state of Georgia may have an interest in the application of those laws. This is not a substantial interest, however, because this Court has discretion

whether to entertain pendent state claims. Thus, only if this Court has personal jurisdiction over the defendants *and* chooses to exercise its pendent jurisdiction over the state claims would Georgia's interest be triggered.

privilege of conducting activities within the United States, it is reasonable to expect them to submit to the burdens of litigating within the United States. If they have done any interstate business or travel, they should have fair warning that they might be haled into federal court in another state to defend themselves in a federal question case. Using this rationale, the national contacts test is still valid.

Nonetheless, it seems unfair in many instances to require someone to defend in a distant forum merely because he is a United States citizen or corporation doing business in the United States. After all, even *Jim Walter* recognized that "one of the 'functions' of due process limitations on jurisdiction is to prevent 'distant or inconvenient' litigation." 651 F.2d at 257. Nevertheless, *Jim Walter* suggested that a finding of minimum contacts automatically protects a defendant's due process rights: "Nothing in *International Shoe* or any later Supreme Court opinion suggests that anything more than minimum contacts is required to support jurisdiction over a nonresident defendant." *Id.*

The Supreme Court clarified in *Burger King,* however, that minimum contacts do not automatically ensure that exercising personal jurisdiction over the defendant comports with "fair play and substantial justice." 471 U.S. at 476, 105 S.Ct. at 2184. As explained above, *Burger King* established that a defendant in a diversity case who has purposefully directed his activities at the forum's residents may defeat jurisdiction with a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. at 2185. The Court explained that "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478, 105 S.Ct. at 2185 (citations omitted).

■ Applying these principles to a federal question case with nationwide service of process, the Court concludes that it must apply a two-pronged test. First, the Court must determine whether the defendant "purposefully availed" itself of the protection of the federal law. In other words, do the requisite national contacts exist? This test will be met easily in most cases. Then, the defendant will have the opportunity to establish a compelling case that exercising jurisdiction would offend "notions of fair play or substantial justice."

■ To determine whether the defendant has met his burden under the second prong of this test, the Court will consider those factors identified by the *Oxford First* court: the defendant's contacts with the forum, inconvenience to the defendant, judicial economy, probable situs of discovery proceedings, and the nature of the regulated activity. *Smith v. Pittsburg Nat'l Bank,* 674 F.Supp. 542, 544 (W.D.Va.1987); *Oxford First,* 372 F.Supp. at 203–204. The *Oxford First* standard reflects the underlying rationale of personal jurisdiction: fundamental fairness. *Smith,* 674 F.Supp. at 544; *Oxford First,* 372 F.Supp. at 203.

E. Applying the New National Contacts Test

■ Once the Court applies this new national contacts test to this case, it becomes clear that this Court has personal jurisdiction over the individual defendants. First, the defendants have purposefully availed themselves of the protection of the federal laws. They reside in the United States, and by exchanging securities they should have fair warning that they may be haled into federal court to defend themselves in a federal securities action. Thus, the defendants have the requisite national contacts to justify the exercise of personal jurisdiction over them.

Applying the *Oxford First* factors does not change this outcome. The defendants simply have not met their burden under the second prong of the standard. It is true that much of the discovery in the case may be conducted in Nashville, Tennessee, although the plaintiff lives in Georgia and Southeastern is a Florida corporation. The other *Oxford First* factors, however, weigh in favor of exercising personal jurisdiction over the defendants. The defendants have

numerous contacts with the forum. Charles Duckworth contacted the plaintiff in Augusta by telephone and Federal Express about the business and the transaction at issue here. During the telephone calls, Lisa Cranford participated in the conversation. In addition to these contacts with Augusta itself, the defendants travelled to nearby areas on numerous occasions during the relevant time. They met at their sisters' homes in Thomasville, Georgia, and Ocilla, Georgia, both in south Georgia, for family reunions. They also met in Perry, Georgia, about 140 miles from Augusta, one other time. At each of these meetings, they discussed business.

It is always more convenient to defend a suit at home than it is to litigate in another state. Nevertheless, defending this suit in Augusta rather than Nashville will not unduly inconvenience the defendants. The defendants cannot complain that they consider the distance from Nashville to Augusta, about 400 miles, far, for they often travel even farther into Georgia. They go to visit Charles Duckworth's relatives several times a year. Ocilla is almost 450 miles from Nashville, and Thomasville is even farther, about 475 miles from Nashville. These visits demonstrate that the defendants do not consider travel into Georgia inconvenient.

Judicial economy also weighs in favor of the Court's exercise of personal jurisdiction over the defendants. This Court will be able to hear the entire case. Because no related suits are pending or contemplated, duplication of effort will not result. *See* *Oxford First*, 372 F.Supp. at 203.

Finally, the complaint alleges securities fraud, which suggests a large impact far from Nashville, Tennessee. As the district court noted in *Smith*, "There is no doubt that securities investing affects the nation, if not the world." 674 F.Supp. at 545. Presumably, this is one reason that Congress had for allowing nationwide service of process in securities fraud cases. In this case, of course, the corporation was closely held, so the alleged fraud directly harmed only the plaintiff. In this sense, the final criteria does not weigh so strongly in favor of jurisdiction. Nevertheless, the evidence overwhelmingly suggests that the Court has the power to exercise personal jurisdiction over the defendants. The Court must deny the defendants' motion to dismiss.

## II. *Venue*

The individual defendants have filed an alternative motion seeking transfer of this case to their place of residence, the Middle District of Tennessee, Nashville Division. The parties and the Court agree that venue is proper both in this district and in the proposed transferee district. Therefore, the only issue left is whether the Court should exercise its discretion to transfer the case under 28 U.S.C. § 1404(a). For the following reasons, the Court DENIES the motion to transfer.

 In deciding whether to transfer this case to Tennessee, the court must not disturb the plaintiff's choice of forum unless that choice is clearly outweighed by other considerations. *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981). Nonetheless, the Court does have broad discretion to transfer the case for "the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (1988). To justify a transfer, the moving party must demonstrate that the balance of convenience and justice "weighs heavily in favor of the transfer." *Electronic Transaction Network v. Katz*, 734 F.Supp. 492, 501 (N.D.Ga.1989) (citations omitted).

 The most important factor under section 1404(a) is the convenience of witnesses, *id.*, yet the defendants have not demonstrated that Tennessee would be a more convenient forum for the witnesses. They assert vaguely that the "key" witnesses live in Nashville, and they suggest that any witnesses added at the last minute may be Nashville residents as well. The defendants do not identify these "key" witnesses, nor do they suggest who the last minute witnesses might be. Many of the plaintiff's witnesses do reside in Nashville, but the parties may be able to use their deposition testimony. Other witnesses live in Georgia and in Orlando, Florida. Geor-

**832**

gia will be just as convenient as Nashville for these witnesses, if not more so. The Court cannot conclude that the Nashville forum would be more convenient for the witnesses than Augusta would.

Nor have the defendants shown that the other factors weigh heavily in favor of transfer. Because the plaintiff lives in Augusta, the Nashville forum would be just as inconvenient for him as Augusta is for the defendants. The defendants attempt to show that justice would be better served by transferring the case by asserting that this Court will have to interpret Tennessee law. The plaintiff has sued for violations of Georgia and federal laws, however, so the Court does not see how the laws of Tennessee will be relevant. If they are, the defendants have not shown that issues under Tennessee law will arise that are too difficult for this Court to resolve. Accordingly, the Court cannot conclude that the interests of justice will be served by transferring this case.

### CONCLUSION

As explained above, the Court has personal jurisdiction over the defendants in this case. The statutory basis for this jurisdiction is found in 15 U.S.C. § 78aa, which provides for nationwide service of process. Exercise of personal jurisdiction does not violate the defendants' due process rights either. The defendants have minimum contacts with the nation, and exercise of personal jurisdiction over them does not offend "traditional notions of fair play and substantial justice."

The Court also declines to transfer venue from this district to the Middle District of Tennessee. The defendants have not shown that the convenience of the parties and witnesses and the interest of justice weigh heavily in favor of the transfer. Accordingly, the Court will not disturb the plaintiff's choice of forum. Both the defendants' motion to dismiss and their motion to transfer venue are DENIED.

SO ORDERED.