**ENTEK CORPORATION and James E. Turner, Plaintiffs,**

v.

**SOUTHWEST PIPE & SUPPLY CO. d/b/a Arizona Pump, Inc.; National Pump Company; Powell Duffryn Public Limited Company; Powell Duffryn (USA) Limited, Inc.; James W. Mason; C. Lee Chipman; Aquapore Corp.; Dasurat Enterprises PTE Ltd.; Moisture Systems, Inc., and J.B. Keysor, Inc., Defendants.**

No. CA–3–85–2505–T.

United States District Court,
N.D. Texas,
Dallas Division.

April 11, 1988.

William D. Sims, Jr., John C. Eichman, Jenkens & Gilchrist, Dallas, Tex., for Entek Corp. and James Turner.

Schuyler B. Marshall, Bruce S. Sodtek, Jonathan W. Richards, Thompson & Knight, Dallas, Tex., for Southwest Pipe and Supply Co., National Pump Co., Moisture Systems, Inc., and J.B. Keysor, Inc.

Lyle Jeanes, II, Vial, Hamilton, Koch & Knox, Dallas, Tex., for James Marson.

Gerard B. Rickey, Pace Chandler & Rickey, Dallas, Tex., and Donald A. Streck and Marvin E. Jacobs, Jacobs & Streak, Ventu-

ra, Cal., for James Mason, Lee Chipman, Aquapore Corp., and Dasurat Enterprises PTE Ltd.

## ORDER

MALONEY, District Judge.

Before the Court are motions to dismiss for want of personal jurisdiction from all Defendants except Southwest Pipe & Supply Company ("Southwest") and National Pump Company ("National").[1]

Two issues underlie the question of whether this Court may exercise personal jurisdiction over the defendants: first, are the defendants amenable to personal jurisdiction in federal court under constitutional standards; and second, was service of process correctly executed.

### I.

*Plaintiffs' Background Version.*

The following background is taken from the allegations in Plaintiffs' complaint.

Plaintiff Turner invented "Leaky Pipe," a porous irrigation pipe and a process to manufacture that product. Turner is the sole owner and president of Plaintiff Entek Corporation ("Entek"). Entek owns and holds three patents covering Leaky Pipe and the manufacturing process.[2] The Leaky Pipe trademark is registered with the United States Patent and Trademark Office.

On September 1, 1982, Entek entered into a distributor agreement with Defendant Chipman which granted Chipman the right to distribute Leaky Pipe in Florida. Chipman and Defendant Mason visited Entek's plant in Southlake, Texas, with Plaintiffs' permission under the pretext that Chipman and Mason would suggest improvements in Leaky Pipe. There, Chipman and Mason signed confidentiality agreements, promising not to misappropriate the information they would receive. Chipman and Mason then obtained technical secrets on the manufacturing process

for Leaky Pipe. Thereafter, Mason, with Chipman's support, used the secrets to apply for patents, without informing Plaintiffs that he would do so. Mason eventually received Patent No. 4,517,316 (the '316 patent).

Chipman formed Defendant Aquapore Corporation ("Aquapore"), and then with Mason received a loan from Dasurat Enterprises PTE LTD ("Dasurat"). Following the visit to the Entek plant, Chipman and Aquapore began to manufacture and market a porous pipe using Entek's patents and the trade secrets and inventions stolen from Plaintiffs. Chipman and Aquapore contracted with Defendant Powell Duffryn Public Limited Co. ("PDPLC"), National, and Southwest to market the pipe worldwide. Aquapore and Chipman also entered into an exclusive licensing agreement with National and Southwest. Representatives of National met in Dallas with representatives of Defendant Moisture Systems Inc. ("Moisture Systems"), at that time a distributor for Plaintiffs, to discuss whether Moisture Systems would become the marketing arm in the United States for National, Southwest, and Powell Duffryn (USA) Limited, Inc. ("PDUSA"). Aquapore and Moisture Systems now operate as the marketing arm for PDPLC, PDUSA, National, and Southwest for porous irrigation pipe. Defendant Keysor manufactures the pipe.

Defendants have used the Leaky Pipe trademark, logo, and have attempted to associate themselves with Plaintiffs' product. Defendants make pipe of inconsistent quality, but the public confuses Defendants' pipe with that of Plaintiffs' because of Defendants' misuse of Plaintiffs' trademark.

Allegedly, this Court has personal jurisdiction over Defendants pursuant to the Texas Long-Arm Statute, Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–17.093 (Vernon 1986) and the principles of due process, because Defendants have done business and committed torts in Texas and this suit

---

1. Southwest and National had moved to dismiss, but withdrew their motions.

2. The Patent Numbers are: 4,300,408 (the '408 patent); 4,110,420 (the '420 patent); and 4,168,-799 (the '799 patent).

arises out of this business and these torts. Plaintiffs served Defendants, except PDPLC and Dasurat, pursuant to the Texas Long-Arm Statute.[3] PDPLC and Dasurat were personally served under Fed.R. Civ.P. 4(i).

## II.

### Personal Jurisdiction Over Individual Defendants.

A. Standard for Personal Jurisdiction.

 When a federal question case is based upon a federal statute which is silent as to service of process,[4] and a state long-arm statute is therefore utilized to serve an out-of-state defendant, Fed.R.Civ.P. 4(e) requires that the state's standard of amenability to jurisdiction apply. *See Point Landing, Inc. v. Omni Capital Int'l, LTD.*, 795 F.2d 415, 427 (5th Cir.1986) (per curiam) (en banc) *aff'd sub nom. Omni Capital Int'l, LTD. v. Rudolf Wolff & Co., LTD.*, 484 U.S. —, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir. 1983). In such a case, personal jurisdiction may be exercised over a nonresident defendant if: (1) the nonresident defendant is amenable to service of process under the law of the forum state; and (2) the exercise of jurisdiction under state law comports with the due process clause of the fifth amendment.[5] *Id.; See D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985).

The first step of this inquiry is to determine the reach of the forum state's long-arm statute. The second step—the due process inquiry—is governed by federal law and requires the satisfaction of two elements: (a) the nonresident must have some minimum contact with the forum which results from an affirmative act on his part; and (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *D.J. Investments, Inc.*, 754 F.2d at 545. Because the Texas long-arm statute has been construed to reach to the limits of due process, *see Hall v. Helicopteros Nacionales de Colombia*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), this Court need only determine whether it may constitutionally assert jurisdiction over the defendants.

 Due process requirements for exercising personal jurisdiction over a nonresident have been delineated in a familiar body of Supreme Court case law. *Burger King v. Rudzewicz*, 471 U.S. 462, 471–478, 105 S.Ct. 2174, 2181–85, 85 L.Ed.2d 528 (1985); *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985). A court must determine whether the nonresident defendant has, through his actions, purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law. The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court in the forum state.

3. Defendants argue that Plaintiffs served process under Tex.Rev.Civ.Stat.Ann. art. 2031b, which has been repealed and that therefore, service is improper. The Texas legislature did repeal art. 2031b, but it also enacted the Civil Practice and Remedies Code, the relevant provisions of which substantially restate art. 2031b. Tex.Civ.Prac. & Rem.Code § 17.041–17.093. The Court therefore rejects Defendants' argument.

4. The statute relevant to this case, 15 U.S.C. § 22 (1973), authorizes nationwide service as to the corporate defendants:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district

wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

5. In a federal question case, fifth amendment due process controls. *Bamford v. Hobbs–Bannerman Corporation*, 569 F.Supp. 160, 168 (Tex. 1983). However, the fourteenth amendment standards of *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny may be applied to the fifth amendment, *Black v. Acme Markets, Inc.*, 564 F.2d 681, 686 n. 8 (5th Cir.1977) or at least used as guidelines. *Time, Inc. v. Manning*, 366 F.2d 690, 694 (5th Cir.1966).

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). The minimum contacts analysis requires more than counting the nonresident's contacts with the forum. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983) *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984).

The Supreme Court observed:

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." ... By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," ... the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." ... Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum ... and the litigation results from alleged injuries that "arise out of or relate to" those activities[.]

*Burger King,* 471 U.S. at 471–472, 105 S.Ct. at 2181–82 (citations and footnotes omitted).

▪ The "purposeful availment" requirement delineates reasonable anticipation of out-of-state litigation. *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239–40. This requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. *Id.*

With respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182–83.

▪ After deciding that a defendant purposefully established minimum contacts with the forum state, the Court must determine whether maintenance of the suit comports with "traditional notions of fair play and substantial justice." *Burger King,* 471 U.S. 476, 105 S.Ct. at 2184 (citing *International Shoe Co.,* 326 U.S. at 320, 66 S.Ct. at 160); *Asahi Metal Industry Co., LTD v. Superior Court of California, Solano County,* 480 U.S. 102, ——, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92, 105–106 (1987). In appropriate cases, courts may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 476–477, 105 S.Ct. at 2184. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be needed. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85. Often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant. *Asahi,* 480 U.S. at ——, 107 S.Ct. at 1034, 94 L.Ed.2d at 105–106. Nevertheless, the fairness factors cannot of themselves invest the court with jurisdiction over a nonresident when the minimum-contacts analysis weighs against the exercise of jurisdiction. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565–66, 62 L.Ed.2d 490.

▪ On the other hand, where a defendant, who purposefully has directed his activities at forum residents, seeks to defeat jurisdiction, he must present a compelling

case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85. This is a rare case. *Asahi,* 480 S.Ct. at ——, 107 S.Ct. at 1035, 94 L.Ed.2d at 107 (Brennan J., concurring in part). Most considerations of reasonableness may be accommodated through means short of finding jurisdiction unconstitutional. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85.

**B.** **Application of Personal Jurisdiction Constitutional Requirements to Individual Defendants.**

 Although the plaintiff has the burden of establishing the district court's jurisdiction over a defendant, his burden is met by presenting a prima facie case for personal jurisdiction when the Court decides the defendant's motion to dismiss without an evidentiary hearing. *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985). The Court is to construe the complaint in the plaintiffs' favor. *GRM v. Equine Investment and Management Group,* 596 F.Supp. 307, 312 n. 8 (S.D.Tex.1984). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *See Washington v. Norton Manufacturing Co.,* 588 F.2d 441, 443 (5th Cir.) *cert. denied,* 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979). Plaintiff's allegations must be taken as true, except as controverted by any affidavits submitted by the defendants. *Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 332 (5th Cir.1982) *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496.

### 1. *Mason.*

 Mason admits that he visited Plaintiffs' plant in Southlake, Texas.[6] While there, he signed a confidentiality agreement with the Plaintiffs and made notes concerning the product and processes he observed.[7] Mason has called Turner regarding the visit while Mason was in California and Turner was in Texas.[8]

Taking Plaintiffs' statement of facts as true, *GRM,* 596 F.Supp. at 312 n. 8; *Brown,* 688 F.2d at 332, and supplementing this statement with the evidence submitted, the Court finds that Mason could reasonably expect to be haled into court in Texas. His contacts with Texas suffice under the personal jurisdiction rules stated above to support this Court's exercise of specific personal jurisdiction over him.

### 2. *Chipman.*

On September 1, 1982, Entek entered into a distributor agreement with Chipman which granted Chipman the right to distribute Leaky Pipe in Florida.[9] In August 1983, Chipman visited Plaintiffs' plant in Southlake, Texas with Mason.[10] Chipman signed a confidentiality agreement with Plaintiffs. He also states that it is a "reasonable assumption" that he made telephone calls to Turner in Texas and wrote to Turner in Texas.[11]

Taking Plaintiffs' statement of facts as true, *GRM,* 596 F.Supp. at 312 n. 8; *Brown,* 688 F.2d at 332, and supplementing this statement with the evidence submitted, the Court finds that Chipman would reasonably expect to be haled into court in Texas. These contacts suffice under the personal jurisdiction rules stated above to support this Court's finding of specific jurisdiction over Chipman.

### 3. *Fair Play and Substantial Justice.*

Both the forum state's and the judicial system's interests would be best served by exercising personal jurisdiction over Mason and Chipman. The forum state's interest would be served, because Plaintiffs are

---

**6.** Affidavit of James W. Mason ¶ 1.

**7.** Deposition of James W. Mason, p. 36, 11.9–20.

**8.** Deposition of James W. Mason, p. 77, 11.1–10.

**9.** First Amended Complaint ¶ 12.

**10.** Affidavit of C. Lee Chipman ¶ 4.

**11.** Deposition of C. Lee Chipman p. 164, 11.8–14. However, it is not clear from the deposition excerpt submitted whether Chipman placed the calls and sent the letters while in Texas or while in another state.

Texas residents, whose business interests have been allegedly damaged. Any recovery they might receive would probably benefit the forum state. The judicial system's interest would be served, because exercising personal jurisdiction over Mason and Chipman will avoid piecemeal litigation. Were the Court to rule otherwise, Plaintiffs would have to also file suit in either Florida or California, or both. Given the ease of travel between states and the fact that Plaintiffs' plant and business are in Texas, and Plaintiffs' interest in obtaining convenient relief, the burden of litigation balance favors Plaintiffs. Thus, jurisdiction over Mason and Chipman comports with traditional notions of fair play and substantial justice. The Court concludes that the due process prong of the specific personal jurisdiction test has been satisfied as to Mason and Chipman.

## III.

### Parties' Analysis of Personal Jurisdiction Over Corporate Defendants

■ All the corporate defendants briefed the irrelevant issue of whether they have minimum contacts with Texas. The relevant jurisdictional issue in this case is whether the corporate Defendants have minimum contacts with the United States. No corporate defendant cited any cases on this issue.[12]

Some of Plaintiffs' arguments in response were relevant. The relevant portions blurred the distinction between the requirements of service and constitutional due process and relied upon questionable authority.

Perhaps the parties' confusion is understandable, since case law on personal jurisdiction and nationwide service of process is less than clear and the very possibility of nationwide personal jurisdiction has been questioned. *Bamford v. Hobbs*, 569 F.Supp. 160, 165, 168 (S.D.Tex.1983). Therefore, the Court next determines what the law of personal jurisdiction and nation-

wide service is, and then makes its own inquiry as to whether it may properly exercise jurisdiction over the corporate defendants.

## IV.

### Law of Minimum Contacts with the United States.

#### A. Point Landing Rule.

The most recent case touching on nationwide jurisdiction is *Point Landing, Inc. v. Omni Capital Int'l, LTD.*, 795 F.2d 415 (5th Cir.1986) (per curiam) (en banc) *aff'd sub nom. Omni Capital Int'l, LTD. v. Rudolf Wolff & Co., LTD.*, 484 U.S. ——, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). In *Point Landing*, the Fifth Circuit held that "absent specific congressional authority, a federal district court has no personal jurisdiction over a defendant who cannot be reached by the long-arm statute of the state in which the district court sits." *Point Landing*, 795 F.2d at 426. This Court cannot decide this case on *Point Landing* alone, however, for two reasons. First, unlike this case, *Point Landing* did not involve a federal statute authorizing nationwide service. Second, the holding simply mentions "specific congressional authority" as an exception to the rule stated above. It does not specifically discuss minimum contacts with the United States.

Therefore, this Court examines the development of nationwide personal jurisdiction and shows that current Fifth Circuit authority establishes a limited nationwide jurisdiction.

#### B. Prior law: Jim Walter Test—Minimum Contacts with the United States.

In *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir.1981), the court held that due process requires only that a defendant in a federal suit have minimum contacts with the United States, "the sovereign that

12. See appendix for chart of which party made which arguments, which arguments would have been relevant for which party, and which arguments succeeded.

has created the court." *Id.* at 256 (footnotes omitted).[13]

*Jim Walter* relied on the due process analysis in *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 291–296, 100 S.Ct. at 564–66, which analyzed due process in terms of sovereignty. *Jim Walter,* 651 F.2d at 256. This sovereignty analysis has been repudiated, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 & n. 10, 102 S.Ct. 2099, 2104 & n. 10, 72 L.Ed.2d 492 (1982), and the Fifth Circuit has questioned the vitality of *Jim Walter.* See *Burstein v. State Bar of California,* 693 F.2d 511, 515 n. 8 (5th Cir.1982); *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1272 n. 16 (5th Cir.1983); *see also Bamford,* 569 F.Supp. at 165.

### C. Point Landing: A Limited Return to Minimum Contacts with the United States.

■ *Point Landing, Inc. v. Omni Capital Int'l, LTD.,* 795 F.2d 415 (5th Cir.1986) (per curiam) (en banc) *aff'd sub nom. Omni Capital Int'l, LTD. v. Rudolf Wolff & Co., LTD.,* 484 U.S. ——, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), when read with *Terry v. Raymond Int'l Inc.,* 658 F.2d 398 (5th Cir.1981) *cert. denied,* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982), produces the following rule: In a federal question case in which nationwide service is statutorily authorized, minimum contacts with the United States will satisfy the due process prong of the personal jurisdiction test.

To arrive at this rule, the Court first examines *Terry,* which held that "[t]he contours of amenability [to jurisdiction] in non-diversity cases are more fluid" than the contours of amenability to jurisdiction in diversity cases. *Terry,* 658 F.2d at 401.[14] The Court understands this language to mean that minimum contacts with the United States will satisfy the due process prong of the personal jurisdiction test.

*Point Landing* overruled *Terry* to the extent that *Terry* differs from *Point Landing.* See 795 F.2d at 427. The difference between the cases is that unlike *Terry, Point Landing* holds that in a federal question case, Rule 4(e) incorporates the forum state long-arm statute when the federal statute sued under does not provide for nationwide service of process.[15] *Point Landing,* 795 F.2d at 427.

The sharp distinction between cases in which nationwide service is statutorily authorized and federal question non-nationwide service cases is reflected in Rule

---

13. Plaintiffs here only allege that Defendants had minimum contacts with Texas; Plaintiffs do not specifically allege that Defendants have minimum contacts with the United States in addition to or in the alternative to alleging that they have minimum contacts with Texas. Plaintiffs' First Amended Complaint ¶ 5. In construing the complaint to do substantial justice, Fed.R. Civ.P. 8(f), the court reads the complaint to allege that Defendants have sufficient contacts with the United States.

14. The *Terry* court did not limit this holding to federal question cases in which nationwide service is provided for. *Terry* clearly meant this rule to apply to any federal question case, including cases in which jurisdiction was based both on federal question and diversity jurisdiction. *Terry,* 658 F.2d at 402–403.

Unlike *Jim Walter, Terry* was not undermined by *Insurance Corp. of Ireland. Terry* correctly understood that laws passed by the United States Congress apply nationwide, but it did not make the *Jim Walter* mistake. Unlike *Jim Walter, Terry* did not say that rules of personal

jurisdiction flow from the concept of sovereignty. *Insurance Corp. of Ireland* said that rules of personal jurisdiction flow from the due process clause which makes no mention of sovereignty. They are rules of fairness. *Insurance Corp. of Ireland,* 456 U.S. at 702 n. 10, 102 S.Ct. at 2104 n. 10. Instead, *Terry* noted that though the constitutional prong of jurisdiction might be satisfied nationwide, the service prong necessary for jurisdiction was nevertheless the greatest limitation on the court's power. *Terry,* 658 F.2d at 402.

15. Rule 4 can limit the Court's jurisdiction, because "[j]urisdiction over the person generally is dealt with by Rule 4, [which governs] the methods of service through which personal jurisdiction may be obtained." *Insurance Corp. of Ireland,* 456 U.S. at 715 n. 6, 102 S.Ct. at 2111 n. 6 (Powell, J., concurring). Rule 4 therefore has been characterized as a jurisdictional provision. Statement by Justice Black and Justice Douglas, dissenting from adoption of amendments to the Federal Rules of Civil Procedure. *See* 374 U.S. 865, 869 (1963).

4(e) [16] and in Fifth Circuit case law. In *Burstein v. State Bar of California*, 693 F.2d 511 (5th Cir.1982), the plaintiff brought suit under 42 U.S.C. § 1983. Hence, there was federal question jurisdiction but no statute providing for nationwide service. The *Burstein* Court distinguished the leading Fifth Circuit cases on personal jurisdiction in federal question cases, *Terry v. Raymond Int'l Inc.*, 658 F.2d 398 (5th Cir.1981); *FTC v. Jim Walter Corp.*, 651 F.2d 251 (5th Cir.1981); and *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir.1977), because they involved federal statutes which asserted jurisdiction and service under the first sentence of Rule 4(e), unlike section 1983. *Burstein*, 693 F.2d at 516.

The *Burstein* court had read *Terry* to be consistent with the later announced *Point Landing* rule. "Given rule 4(e)'s carefully drawn distinction between the assertion of jurisdiction by a federal statute and by a state statute, we do not believe *Terry's* language extends to a case where assertion of jurisdiction is made *only* under the state long-arm statute. In such a case amenability must be measured by the state standard." *Burstein*, 693 F.2d at 516. (Emphasis added).

This Court's rule is consistent with due process and would not impose undue burdens on defendants. Defendants would still be protected by the Fifth Amendment due process clause and the line of cases that require fair play and substantial justice. *Asahi*, 480 U.S. at ——, 107 S.Ct. at 1035, 94 L.Ed.2d at 107 (Brennan, J., concurring in part). Even failing a motion to

dismiss for lack of jurisdiction under the due process clause, a defendant could still move to transfer under appropriate venue statutes or under the doctrine of forum non conveniens. *Terry*, 658 F.2d at 402; *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85.

D. Meaning of "Minimum Contacts with the United States."

Having established that minimum contacts with the United States is the correct standard to determine whether this Court may exercise personal jurisdiction over a corporate defendant in an antitrust case, the Court now turns to the question of what minimum contacts with the United States means.

This Court has found only three Fifth Circuit cases that involved the standard of minimum contacts with the United States; none define the standard. *Jim Walter* only states that resident United States corporations necessarily have minimum contacts with the United States. *Jim Walter*, 651 F.2d at 256. Likewise, the *Terry* court simply found that the defendant, a Wisconsin corporation, was amenable to service under the federal amenability standard. *Terry*, 658 F.2d at 400, 403. Another antitrust case, *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir.1977) avoided this issue by deciding that the defendant had sufficient minimum contacts with the forum state. *Id.* at 685 n. 5.

One additional case from the district court should be noted. *Bamford v. Hobbs*, 569 F.Supp. 160, 166 (S.D.Tex.1983) (Single-

**16.** Rule 4(e), first sentence, provides:

**Summons: Service Upon Party Not Inhabitant of or Found Within State.**

Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule.

Rule 4(e), second sentence, provides:

Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to such a party to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

The case *sub judice* falls under the first sentence of Rule 4(e).

ton, C.J.)[17] suggested a modified nationwide jurisdiction. *Bamford v. Hobbs* was the first case to face a federal question nationwide service case in this Circuit after the demise of *Jim Walter.* In *Bamford*, plaintiffs sued for antitrust violations, among other things. *Bamford,* 569 F.Supp. at 163.

The *Bamford* Court held that the rejection of sovereignty as a basis for personal jurisdiction in *Insurance Corp. of Ireland*, meant there was no compelling reason for a court to observe sovereign boundaries and equate "fair play and substantial justice" with minimum contacts with the United States. *Bamford,* 569 F.Supp. at 166. The *Bamford* court suggested carefully analyzing the facts in each case to determine whether a defendant had "nationwide" or "regional" contacts and hence, whether the Court could exercise nationwide jurisdiction. *Id.* If a defendant had adequate "nationwide" contacts, then the court could exercise nationwide jurisdiction over that defendant. *Id.* If the defendant only had regional contacts, and no minimum contacts with the forum state, then the court could not, under the *Bamford* analysis, exercise personal jurisdiction over the defendant. *Id.*

Thus, the *Bamford* court understood the death of *Jim Walter* to mean that although nationwide service is permitted in antitrust cases, nationwide jurisdiction does not automatically follow. *Bamford,* 569 F.Supp. at 166.

The *Bamford* modified nationwide jurisdiction is rejected for two reasons. First, it is inconsistent with the Supreme Court's "contacts plus" [18] analysis of personal jurisdiction announced in *Burger King v. Rudzewicz,* 471 U.S. at 471–478, 105 S.Ct.

at 2184–85 and *Asahi*, 480 U.S. at ——, 107 S.Ct. at 1034, 94 L.Ed.2d at 105–106. Second, *Bamford's* modified nationwide contacts method affords even less predictability, *Burger King,* 471 U.S. at 471–472, 105 S.Ct. at 2181–82, than is already offered by the Courts. Businesses wishing to avoid nationwide jurisdiction would have no way to know when they had too many contacts in too many different states. *See also Colon v. Gulf Trading Co.,* 609 F.Supp. 1469, 1475 n. 10 (D.C. Puerto Rico 1985).

Left with no guidance as to the meaning of "minimum contacts with the United States" other than that United States corporations have such contacts, the Court must formulate its own definition of this standard. The Court's solution is to follow the definition of "minimum contacts" already given in section II of this Order, except that instead of applying only to an individual state, it would apply to all of the United States.[19]

### E. Application of Nationwide Contacts Requirements to Corporate Defendants.

#### 1. *PDPLC.*

PDPLC is an English corporation with its principal place of business in London.[20] PDPLC's evidence of its lack of contact with Texas does not address the question of whether it has minimum contacts with the United States. Therefore, the Court takes Plaintiffs' uncontroverted allegation that PDPLC has minimum contracts with the United States as true. *Brown,* 688 F.2d at 332. PDPLC has not shown that jurisdiction over it would not comport with traditional notions of fair play and substantial justice.

---

**17.** *See also GRM v. Equine Investment and Management Group,* 596 F.Supp. 307 (S.D.Tex. 1984) (Singleton, C.J.), which states the same rule as *Bamford,* but in a securities fraud case.

**18.** *See* Weintraub, *Asahi Sends Personal Jurisdiction Down the Tubes,* 23 Tex.Int'l L.J. 55, 59 (1988). "Contacts plus" refers to the due process requirement of minimum contacts, plus the requirement that the maintenance of the suit comport with traditional notions of fair play and substantial justice.

**19.** Conceivably, a federal district court sitting in the southern district of Florida could, in an antitrust case, exercise personal jurisdiction over a corporate defendant which had its sole place of business in Alaska, provided that the fundamental fairness test is satisfied, *Burger King,* 471 U.S. at 471–478, 105 S.Ct. at 281–84; *Asahi,* 480 U.S. at ——, 107 S.Ct. at 1034, 94 L.Ed.2d at 105–106, and service is properly executed.

**20.** Declaration of John Seagrave ¶ 3.

■ Because the Court should exercise great care and reserve in extending our notions of personal jurisdiction into the international field, *Asahi*, 480 U.S. ——, 107 S.Ct. at 1034–35, 94 L.Ed.2d at 106, PDPLC may later reurge its motion to dismiss upon showing that it has insufficient contacts with the United States or that jurisdiction over it would not comport with traditional notions of fair play and substantial justice.

### 2. *PDUSA, Aquapore, Moisture Systems, and Keysor.*

All four of these American corporations clearly have minimum contacts with the United States. Each of these corporations could reasonably expect to be haled into court in the United States. *Terry*, 658 F.2d at 403.

### 3. *Dasurat.*

■ Dasurat is a Singapore corporation which is solely in the business of providing venture capital to businesses.[21] Dasurat has performed only one act in the United States: it recorded Mason's assignment of his patent application to Dasurat in the United States Patent and Trademark Office. Otherwise, Dasurat has conducted no business in the United States.[22]

Dasurat's one act does not permit a finding of minimum contacts. Dasurat could not reasonably have expected to be haled into court in the United States. Dasurat would suffer a heavy burden to litigate in the distant forum which would outweigh the Plaintiff's interest in obtaining convenient and effective relief. Therefore, Dasurat is dismissed without prejudice.

### 4. *Fair Play and Substantial Justice.*

On the evidence before it, the Court concludes that the judicial system's interest would be best served by exercising personal jurisdiction over PDPLC, PDUSA, Aquapore, Moisture Systems, and Keysor, be-

cause this will avoid piecemeal litigation. Given the ease of travel between states and the fact that Plaintiffs' plant and business are in Texas, and Plaintiffs' interest in obtaining convenient relief, the burden of litigation balance favors Plaintiffs. Thus, jurisdiction over these defendants comports with traditional notions of fair play and substantial justice. The Court holds that the due process prong of the personal jurisdiction test has been satisfied as to these defendants.

### IV.

### *Nationwide Service and Use of State Long-Arm Statute.*

#### A. Black Dicta Invalid.

■ The Court now analyzes the second of the two issues mentioned at the beginning of this Order, whether service was correctly executed.[23]

Plaintiffs rely upon *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir.1977) for the following rule: In a federal question nationwide service case, even if the state long-arm statute is used, the plaintiffs need only see that the "manner" of service is proper; the "circumstances" of state long-arm statutes are simply irrelevant to the in personam jurisdiction of a federal court. *Id.* at 684. The *Black* court distinguishes "manner" of service from "circumstances" of service. *Id.* at 685. The term "circumstances" means those requirements that a plaintiff must establish in federal question non-nationwide service cases, such as minimum contacts with the forum state and "manner" apparently means the physical method employed to serve process, such as sending process to the Secretary of State. *See Hall–Mark Electronics Corp. v. MGS Marketing, Inc.*, No. 86–C–4346 (E.D.N.Y. March 27, 1987) [available on WESTLAW, 1987 WL 9045]. The *Black* court fell short

---

**21.** Affidavit of Phillip Loiterton ¶ 4; Plaintiffs' first amended complaint ¶ 2.

**22.** Affidavit of Phillip Loiterton ¶ 8.

**23.** Though 15 U.S.C. § 22 authorizes nationwide service in this case, *see supra* note 4, it does not detail how service is to be made. For this, Plaintiffs turned to Fed.R.Civ.P. 4(e), *supra* note

**13.** Rule 4(e) directed Plaintiffs to choose one of the methods of service listed in Rule 4. Among these methods was the option to serve Defendants by the Texas Long–Arm Statute. Plaintiffs served process on all defendants save PDPLC and Dasurat by using the Texas Long–Arm Statute, Tex.Civ.Prac. & Rem.Code § 17.042 (Vernon Supp.1986).

of making this the law in the Fifth Circuit, saying that it need not decide if this "plausible reading" of Rule 4 is "correct," because the Court had also concluded that the Texas Long–Arm statute embraced the actions of the defendants in that case. *Black*, 564 F.2d at 685 n. 5.

The *Black* court bases its analysis on former Rule 4(d)(7).[24] *Id.* at 685 n. 5. However, Rule 4(d)(7) was repealed and its language was not written into any other part of Rule 4. Pub.L. No. 97–462, 96 Stat. 2528 (1983). Therefore, the *Black* court's analysis of Rule 4(d)(7), no longer applies to the current Rule 4. The *Black* dicta permitting extraterritorial federal process to Section 12 of the Clayton Act to be served without regard to the "circumstances" required by state law when the state long-arm statute is used, is invalid. Hence, even in this federal question case in which congress authorized nationwide service, because Plaintiffs chose to serve process by the Texas long-arm statute, Tex.Civ.Prac. & Rem.Code § 17.042,[25] then Plaintiffs had to comply with that statute's requirements. If Plaintiffs do not comply, the Court may not exercise personal jurisdiction over defendants so served. Corporate defendants in an antitrust suit need not necessarily be served through the forum state's long-arm statute, *Bamford*, 569 F.Supp. at 164, but if they are so served, then the long-arm statute must be complied with.

**B. Application of Minimum Contacts Requirements.**

**1. *PDPLC.***

Because Plaintiffs effected personal service on PDPLC, there is no issue as to whether Long–Arm service as to PDPLC was proper.

**2. *PDUSA.***

PDUSA is a Delaware corporation with its principal place of business in Connecticut.[26] PDUSA holds only three bank accounts: one in New York City and two in Stamford, Connecticut.[27] PDUSA is strictly a holding company and does not provide or offer any goods or services directly to the consuming public.[28] All evidence submitted shows that PDUSA has not entered into any contracts with residents of Texas, or recruited or located employees in Texas, or committed a tort in whole or in part in Texas.[29] PDUSA has controverted Plaintiffs' assertion that it has minimum contacts with Texas. *Brown*, 688 F.2d at 322.

The only other possible basis for jurisdiction would be to hold that PDUSA was an alter ego of Southwest, and that Southwest was an alter ego of National, a Texas corporation, and that PDUSA thereby established minimum contacts with Texas.

■ Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983). Only when there is a close relationship between a parent and its subsidiary can there be a finding that the parent "does business" in a jurisdiction through the local activities of

---

24. Rule 4(d)(7) provided: "Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

25. Tex.Civ.Prac. & Rem.Code § 17.042 provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
(2) commits a tort in whole or in part in this state; or
(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

26. Affidavit of John Mitchell ¶ 3.

27. Deposition of John Mitchell, p. 33.

28. Affidavit of John Mitchell ¶ 4.

29. Affidavit of John Mitchell ¶¶ 5–14.

its subsidiaries. *Id.* It has long been recognized, however, that in some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent "does business" in a jurisdiction through the local activities of its subsidiaries. *Id.* The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary "that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Id.* Problems arise, however, in articulating the type and degree of control necessary to ascribe to a parent the activities of its subsidiary.

The Supreme Court addressed this problem in *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). There, the Court ruled that the essential test is whether there is formal corporate separation. *Id.* at 335. That the subsidiary is wholly owned, that there is commonality of directors, and that there is some control by the parent over the subsidiary does not matter. *Hargrave*, 710 F.2d at 1160.[30]

■■■ PDUSA's control over its subsidiaries is not greater than that normally associated with common ownership and directorship. PDUSA has overseen major proposals, but it has not exercised domination and control over internal business operations and affairs of the subsidiary.[31] Plaintiffs have not alleged that there is no formal separation between PDUSA, Southwest, and National.

Construing Plaintiffs' complaint in their favor, *GRM*, 596 F.Supp. at 312 n. 8, and taking Plaintiffs' statement of facts as true except as controverted, *Brown*, 688 F.2d at 332, then PDUSA has no minimum contacts with Texas. Tex.Civ.Prac. & Rem.Code § 17.042. Therefore, PDUSA is dismissed without prejudice for want of personal jurisdiction because of improper service. Plaintiffs may again attempt service on PDUSA under an appropriate provision of Rule 4.

### 3. *Aquapore.*

■■■ Aquapore is a Florida corporation with its principal place of business in Florida.[32] Plaintiffs allege that Aquapore has done business and committed torts in Texas. Aquapore has sold soaker hose to merchants in Texas, including in this district and expected to receive payment for those hoses at an address in Arizona.[33] Aquapore has failed to controvert Plaintiffs' allegation that Aquapore has minimum contacts with Texas.[34]

Construing Plaintiffs' complaint in their favor, *GRM*, 596 F.Supp. at 312 n. 8, and taking Plaintiffs' statement of facts as true, *Brown*, 688 F.2d at 332, then Aquapore has minimum contacts with Texas. Tex.Civ.Prac. & Rem.Code § 17.042. Plaintiffs' claims against Aquapore arise out of Aquapore's relationship to the forum, i.e. its sale of pipe in Texas. Therefore, service was proper under the Texas Long–Arm statute.

### 4. *Moisture Systems.*

Moisture Systems is an Illinois corporation with its principal place of business in Illinois.[35] A representative of Moisture

---

**30.** PDUSA does own all of the stock in Southwest, which owns all of the stock in National, a Texas corporation. *Telephone Conference Deposition of John Mitchell*, p. 17. There is some commonality of directors on the boards of the three corporations. *Telephone Conference Deposition of John Mitchell*, p. 27–28.

**31.** Telephone Conference Deposition of John Mitchell at 67; Deposition of Dennis Willet, p. 62, 11.4–10.

**32.** First Amended Complaint ¶ 2.

**33.** See Deposition of Roger Jeschke, exhibit 88. Exhibit 88 consists of invoices bearing the names of both National and Aquapore evidenc-

ing sales totalling approximately $8,000.00 of soaker hose to merchants in Lubbock and San Antonio, Texas.

**34.** Defendant Chipman, president of Aquapore, filed an affidavit which fails to set forth any specific facts. He merely makes the conclusory statement that "Neither I nor Aquapore have ever done business of any kind in the State of Texas or this Judicial District." Affidavit of C. Lee Chipman ¶ 6.

**35.** Affidavit of Shannon Bard ¶ 2.

Systems met in the Dallas, Texas, area with other businessmen several times for the purpose of doing business in the porous pipe area.[36] Further, Moisture Systems has a representative for sales in Texas, who has made presentations on behalf of Moisture Systems in Dallas.[37] Further, Moisture Systems has sold porous pipe to customers in Texas.[38]

Construing Plaintiffs' complaint in their favor, *GRM*, 596 F.Supp. at 312 n. 8, and taking Plaintiffs' statement of facts as true, *Brown*, 688 F.2d at 332, then Moisture Systems has minimum contacts with Texas. Tex.Civ.Prac. & Rem.Code § 17.042. Plaintiffs' claims against Moisture Systems arise out of Moisture Systems' relationship to the forum, i.e. its sale of pipe in Texas. Therefore, service was proper under the Texas Long–Arm statute.

#### 5. *Keysor.*

■ Defendant Keysor is a California corporation with its principal place of business in California.[39] Keysor has only sold porous pipe to one buyer, Southwest, and sells pipe F.O.B. at its manufacturing facilities in California.[40] Keysor has controverted Plaintiffs' assertion that it has minimum contacts with Texas. *Brown*, 688 F.2d at 332. All the evidence shows that Keysor has not formed any contract in Texas or with residents of Texas, recruited any employees in Texas, or committed a tort in whole or in part in Texas.[41]

Construing Plaintiffs' complaint in their favor, *GRM*, 596 F.Supp. at 312 n. 8, and taking Plaintiffs' statement of facts as true except as controverted, *Brown*, 688 F.2d at 332, then Keysor has no minimum contacts with Texas. Tex.Civ.Prac. & Rem.Code § 17.042. Therefore, Keysor is dismissed

without prejudice for want of personal jurisdiction because of improper service. Plaintiffs may again attempt service on Keysor under an appropriate provision of Rule 4.

#### 6. *Mason and Chipman.*

As shown above, Mason's and Chipman's contacts with Texas suffice under the personal jurisdiction rules stated above to support this Court's finding that it may exercise specific personal jurisdiction over them. Tex.Civ.Prac. & Rem.Code § 17.042. Therefore, Mason's and Chipman's contacts also suffice to permit service under the Texas Long–Arm statute. *Helicopteros*, 638 S.W.2d at 872.

### V.

### *Conclusion.*

Because the due process and service prongs of the personal jurisdiction test have been satisfied as to PDPLC, Mason, Chipman, Aquapore, and Moisture Systems, this Court may exercise personal jurisdiction over them. Their motions to dismiss for lack of personal jurisdiction are denied.

Dasurat is dismissed without prejudice because Plaintiffs failed to satisfy the due process prong of the in personam jurisdiction test.

PDUSA and Keysor are also dismissed without prejudice because Plaintiffs failed to properly execute service on them. Plaintiffs may again attempt service on PDUSA and Keysor under an appropriate subsection of Rule 4.

It is so ORDERED.

---

**36.** Deposition of Shannon Bard p. 25, 1.5—p. 26, 11.1–5; p. 26, 11.24–25—p. 27, 11.1–11; p. 29, 11.10–25.

**37.** Deposition of Shannon Bard p. 31, 11.23–25 —p. 32, 11.1–3, 21–23.

**38.** Deposition of Shannon Bard p. 90, 11.7–14.

**39.** Affidavit of James B. Keysor ¶¶ 2, 3, and 5.

**40.** Affidavit of James B. Keysor ¶ 3.

**41.** Affidavit of James B. Keysor ¶¶ 2–14.

## APPENDIX
### Which Party Made Which Argument

| Argument Made | PDPLC | PDUSA | Mason | Chipman |
|---|---|---|---|---|
| No contacts with Texas (constitutional prong) | X | X | X | X |
| Improper service | X | X | | |
| No Contacts with United States | | | | |

### Which Arguments Would Have Been Relevant for Which Party

| Argument | PDPLC | PDUSA | Mason | Chipman |
|---|---|---|---|---|
| No contacts with Texas (constitutional prong) | | | X | X |
| Improper Service | X | X | X | X |
| No contacts with United States | X | X | | |

### Successful Arguments

| Argument | PDPLC | PDUSA | Mason | Chipman |
|---|---|---|---|---|
| No contacts with Texas (constitutional prong) | | | | |
| Improper service | | X | | |
| No contacts with United States | | | | |

### Which Party Made Which Argument

| Argument | Aquapore | Dasurat | Moisture | Keysor |
|---|---|---|---|---|
| No contacts with Texas (constitutional prong) | X | X | X | X |
| Improper service | | | X | X |
| No contacts with United States | | X | | |

### Which Arguments Would Have Been Relevant for Which Party

| Argument | Aquapore | Dasurat | Moisture | Keysor |
|---|---|---|---|---|
| No contacts with Texas (constitutional prong) | | | | |
| Improper service | X | X | X | X |
| No contacts with United States | X | X | X | X |

### Successful Arguments

| Argument | Aquapore | Dasurat | Moisture | Keysor |
|---|---|---|---|---|
| No contacts with Texas (constitutional prong) | | | | |
| Improper service | | | | X |
| No contacts with United States | | X | | |